# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) INSTITUTE FOR JUSTICE,<br><br>   Plaintiff,<br><br> v.<br><br>(1) JOHN HAWKINS, Chairman of the Oklahoma Ethics Commission;<br>(2) KAREN LONG, Vice-Chairman of the Oklahoma Ethics Commission;<br>(3) HOLLY EASTERLING, Commissioner of the Oklahoma Ethics Commission;<br>(4) CHARLIE LASTER, Commissioner of the Oklahoma Ethics Commission;<br>(5) CATHY STOCKER, Commissioner of the Oklahoma Ethics Commission;<br>(6) ASHLEY KEMP, Executive Director of the Oklahoma Ethics Commission,<br><br>   Defendants. | Case No. CIV-18-934-D |

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. No. 26]. Plaintiff Institute for Justice ("Institute") has filed a response [Doc. No. 30] and Defendants have replied [Doc. No. 31]. The matter is fully briefed and at issue.

## BACKGROUND

The Institute is a nonprofit, public interest law firm that engages in public advocacy, litigation, and strategic research. The Institute employs two individuals with principal job duties of lobbying and two lobbyists working under contract. The Institute states in its Complaint [Doc. No. 1] that one of the in-house lobbyists is registered as a lobbyist in

Oklahoma. The Institute alleges this registered lobbyist has lobbied in Oklahoma during the year prior to filing the instant action.

The Institute's goal is to engage state and federal government officers and employees on issues involving licensing laws, occupational restrictions, and the influence of special interest groups. To achieve this goal, the Institute would like to distribute the book "Bottleneckers: Gaming the Government for Power and Private Profit" to officers and employees of the legislative and executive branches of the State of Oklahoma.

The edition of "Bottleneckers" that the Institute seeks to distribute has a retail value of $15.00. The Institute requested an advisory opinion from the Oklahoma Ethics Commission ("OEC") to determine the legality of distributing this book. The OEC interpreted the Institute's questions as:

> May an executive or legislative lobbyist give to a state officer or employee a book which the lobbyist principal may purchase at a discounted author rate of approximately $15?"

Complaint [Doc. No. 1] at ¶ 21. The OEC answered that Ethics Rule 5 prohibits gifting a book to a state officer or employee if the market value is greater than $10.00.

The Institute claims that this restriction violates its First Amendment rights to freedom of speech and to "petition the government for the redress of grievances, and specifically the right to express their ideas, hopes, and concerns to government officers and employees." Complaint at ¶ 39. The Institute requests a declaratory judgment that Ethics Rules 5.6, 5.8, 5.11, and 5.13, as applied to the distribution of informational materials to legislative branch officers and employees: (1) unconstitutionally regulate political speech;

2

and, (2) unconstitutionally regulate petitions to the government. The Institute also seeks a permanent injunction.

Defendants move to dismiss this case on the basis that the Institute: (1) lacks standing as it was not a lobbyist or lobbyist principal at the time the Complaint was filed; and, (2) fails to state a claim for which relief can be granted. Defendants also request that the Court decline to exercise its discretion to entertain this declaratory judgment action. In response to Defendants' Motion, the Institute concedes that it was not a lobbyist or lobbyist principal at the time the Complaint was filed, but asserts that it has since attained that status and contends that it has properly stated a claim for relief. Response at 6.

Because the Court finds that the Institute lacked standing at the time the Complaint was filed, the Court need not address whether the Institute has sufficiently stated a claim for which relief can be granted.

## STANDARD OF DECISION

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id.* In a factual attack, the moving party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.* Instead, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary

hearing to resolve disputed jurisdictional facts. *Id.* In this case, Defendants raise a factual attack on jurisdiction and present materials outside the Complaint. Therefore, the Court does not presume the truthfulness of the Complaint's factual allegations.

"Constitutional standing is a threshold jurisdictional question" that "must be satisfied prior to adjudication by Article III courts" of claims brought pursuant to the Federal Declaratory Judgment Act. *Trant v. Oklahoma*, 874 F. Supp. 2d 1294, 1299 (W.D. Okla. 2012), *aff'd, Trant v. Oklahoma*, 754 F.3d 1158 (10th Cir. 2014). "Standing doctrine is designed to determine *who* may institute the asserted claim for relief." *ACORN v. City of Tulsa, Okl.*, 835 F.2d 735, 738 (10th Cir. 1987) (quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986) (emphasis in original)). "Absent a plaintiff with constitutional standing, federal courts lack jurisdiction." *Id*.

"'[S]tanding is determined at the time the action is brought . . . and we generally look to when the complaint was first filed, not to subsequent events' to determine if a plaintiff has standing." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (quoting *Mink v. Suthers,* 482 F.3d 1244, 1253-54 (10th Cir. 2007)) (internal citation omitted); *see also, Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016) ("We measure standing as of the time the plaintiff files suit."). "The burden is on the plaintiff to establish standing." *Brown*, 822 F.3d at 1164 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)). In order to satisfy Article III's standing requirements, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely,

as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Palma*, 707 F.3d at 1153. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore,* 495 U.S. at 158, 110 S.Ct. 1717. "An Article III injury ... must be more than a possibility.... The threat of injury must be both real and immediate." *Essence, Inc. v. City of Federal Heights,* 285 F.3d 1272, 1282 (10th Cir.2002) (quotation omitted).

## DISCUSSION

The Institute challenges the constitutionality of Ethics Rule 5 which limits the gifts that executive and legislative officers and employees can receive from lobbyists or their lobbyist principals. Complaint at ¶ 26. The parties agree that the challenged Ethics Rules apply only to lobbyists and lobbyist principals as defined therein, and the Institute specifically alleges in its Complaint that the $10 gift ban stated in Rule 5 applies to it because it employs a registered lobbyist. Complaint at ¶¶ 21, 26; Motion at 5, 7; Response at 11, 12; *see also*, Ethics Rule 5.2, 5.3, 5.4, and 5.5. Therefore, standing to challenge Ethics Rule 5 exists only if the Institute was a lobbyist or lobbyist principal as defined therein at the time its Complaint was filed.

Although the Institute alleges in its Complaint that one of its "in-house lobbyists is registered as a lobbyist" and it "thus qualifies as a 'lobbyist principal' under Oklahoma Ethics Rule 5.2," Defendants note in their Motion that the Institute had not employed a registered lobbyist in Oklahoma since at least January 2015 when Rule 5 became effective.

5

Complaint at ¶ 26; Motion at 5. In response, the Institute admits it was not a lobbyist principal at the time the Complaint was filed but asserts that this was "[d]ue to an inadvertent error," and that it "believed that it was registered as a lobbyist principal at the time it filed the Complaint, but it turns out that it was not." Response at 1, 2, 3.[1] The Institute characterizes this "inadvertent error" as "irrelevant." Response at 1, 6.

The Institute argues that regardless of registration, it has standing to challenge Rule 5 because: (1) it employed a person who performed services that included executive and/or legislative lobbying at the time the Complaint was filed; and, (2) it "will be employing" another individual for the purpose of conducting lobbying activities as defined and regulated by Rule 5; and, (3) Rule 5 nonetheless has a "chilling effect" on its speech. Response at 4, 6, 12.

**A.**     **Lobbyist Principal Regardless of Registration**

In support of its contention that it was a lobbyist principal at the time the Complaint was filed, the Institute points to the definitions of "lobbyist" and "lobbyist principal" contained in Rule 5.2(4), (8), and (9), and its purported lobbyist employee's testimony before the Oklahoma State Legislature in support of deregulating hair braiding. Complaint

---

[1] The Institute admits that the lobbyist employee relied upon in their Complaint for its status as a "lobbyist principal" had allowed his registration to lapse eight (8) years prior to the Complaint's filing date. Response at 3. The Complaint was filed on September 24, 2018. Defendants filed their Motion to Dismiss on October 18, 2018. The Institute's employee lobbyist re-registered on November 5, 2018, nearly six weeks after the Complaint was filed and three days before its response brief was filed on November 8, 2018. *Id*. at 1, 3, 9. In addition, the Institute admits that the renewal of the employee lobbyist's registration occurred in connection with lobbying interests unrelated to this case. *Id*. at 9.

at ¶ 26; Response at 4.  However, the Institute admits that such testimony does not fall within the definition of lobbying activity regulated by Rule 5.  Response at 4, n.2.  Indeed, Rule 5.2(3) and 5.2(7) specifically exclude from the definitions of executive and legislative lobbying any "testimony given before, or submitted in writing to, a committee or subcommittee of the Legislature."  This testimony is the only purported lobbying activity the Institute points to in support of its contention that it was subject to Rule 5 at the time it filed the Complaint.  The Court finds this argument insufficient to establish the Institute was a lobbyist principal as defined by Rule 5 at the time of filing the Complaint and, therefore, insufficient to establish an actual or imminent injury in fact at the time the Complaint was filed.

The Court likewise finds unpersuasive the Institute's assertion that it "*will* be employing Mr. McGrath" to perform functions defined within the challenged rule as lobbying activities.  Response at 6 (emphasis added). The Institute attaches an affidavit in which Mr. McGrath attests he last engaged in lobbying in Oklahoma from 2009 to 2010 and allowed his registration to lapse at that time.  Affidavit of Lee McGrath [Doc. No. 30-1] at ¶ 7.  Mr. McGrath further testifies that he re-registered as a lobbyist on November 5, 2018, approximately six weeks after the Complaint was filed, because he "plan[s] to travel to Oklahoma to lobby" in support of various legislation. *Id*. at ¶ 8. These assertions are speculative and fail to establish an injury in fact at the time the Complaint was filed. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).

## C. Chilling Effect

Finally, the Institute argues that "it need not have yet registered as a lobbyist principal for the Oklahoma Ethics Rule to chill the Institute's speech." Response at 12. The Institute asserts that in order to demonstrate standing to bring a First Amendment challenge, it need only show:

> (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so *because of* a credible threat that the statute will be enforced.

Response at 8 (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006)). However, these factors merely contribute to satisfying "the requirement that [the] claim of injury be 'concrete and particularized'" in a suit "for prospective relief based on a 'chilling effect' on speech." *Walker*, 450 F.3d at 1089. These factors do not absolve a challenging party from demonstrating the other Article III standing requirements.

In *Walker*, several wildlife advocacy groups brought a First Amendment challenge to a Utah Constitutional provision requiring a supermajority to initiate wildlife legislation while all other initiatives could be brought by a simple majority vote. *Walker*, 430 F.3d at 1085. The Tenth Circuit stated that the Constitutional provision in question applied to "anyone, [p]laintiffs included," who might "mount[] an initiative campaign involving wildlife management." *Id.* at 1090. In this case, it is only lobbyists and lobbyist principals as defined and registered pursuant to the provisions of Rule 5 that are subject to the challenged restrictions.

8

It is the Institute's burden to establish standing. The Court finds that the Institute has failed to provide any authority to support the contention that it was subject to Ethics Rule 5 at the time the Complaint was filed. "[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S. Ct. 2759, 2769, 171 L. Ed. 2d 737 (2008) (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180).

## CONCLUSION

For the reasons stated above, the Institute has not demonstrated it had standing at the time the action was commenced. Accordingly, this action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss [Doc. No. 26] is **GRANTED**. This action is dismissed for lack of subject matter jurisdiction, without prejudice to refiling.[2] A separate judgment will follow.

**IT IS SO ORDERED** this 9th day of August 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[2] "[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims."). *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (citations omitted) (emphasis supplied).

9